AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
The Google accounts luke.stmarie44@gmail.com and ) Case No.  MJ20-384
rachelhurtt8530@gmail.com, more fully described in )
Attachment A. )

**APPLICATION FOR A SEARCH WARRANT**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, attached hereto and incorporated herein by reference.

located in the ____Northern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 842(a)(1) | Prescribing controlled substances without a legitimate medical purpose |

The application is based on these facts:
✓ See Affidavit of Special Agent Gerald Russell, continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
Applicant's signature

Gerald Russell, Special Agent
Printed name and title

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: June 26, 2020

_____
Judge's signature

City and state:  Seattle, Washington      Michelle L. Peterson, United States Magistrate Judge
Printed name and title

USAO: 2020R00359

# AFFIDAVIT

STATE OF WASHINGTON  )
                     )  ss
COUNTY OF KING       )

I, Gerald Russell, being first duly sworn, depose and state as follows:

## INTRODUCTION AND INVESTIGATOR BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the Seattle Field Division. As such, I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a DEA Special Agent for approximately eight years. During that time, I have participated in numerous investigations of unlawful drug distribution and importation of narcotics. In the course of those investigations, I have conducted or participated in surveillance, wiretap investigations, undercover transactions, the introduction of undercover agents and confidential sources, the execution of search warrants, debriefing of informants, and reviews of taped conversations and drug records. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are imported and distributed; the way in which illegal drugs are prepared, packaged, and sold on the street; some of the methods of payment for such drugs; some of the methods that are used to disguise the source and nature of the profits made by narcotics dealers; and other efforts of persons involved in such activity to avoid detection by law enforcement. I also have significant experience monitoring cellphone location data and using it to conduct surveillance of suspected drug traffickers and distributors.

2. The facts set forth in this Affidavit are based on the personal knowledge and observations of DEA Diversion Investigator Heather Achbach during the course of this investigation, as well as DI Achbach's witness interviews and review of documents obtained during the investigation. I have spoken with DI Achbach regarding the investigation and the

Affidavit of Special Agent Gerald Russell - 1
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

facts contained in this affidavit. This affidavit does not include each and every fact and detail known to me or DI Achbach concerning this investigation, but instead sets forth only the material facts necessary to establish probable cause.

3. Based on my training and experience and the training and experience of DI Achbach, the facts as set forth in this affidavit, there is probable cause to believe that Luke ST. MARIE has committed violations of 21 U.S.C. §§ 841(a)(1) and 842(a)(1) (prescribing controlled substances without a legitimate medical purpose). There is also probable cause to search the information described in Section I of Attachment B for the evidence or instrumentalities of these crimes further described in Section II of that Attachment.

## PURPOSE OF THIS AFFIDAVIT

4. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) for a warrant for information associated with the Google accounts **Luke.stmarie44@gmail.com** and **rachelhurtt8530@gmail.com** (the "Subject Accounts"), stored at premises controlled by Google LLC ("Google"), an email provider that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA 94043. This information is further described in Attachment A.

5. As further discussed below, one of the Subject Accounts is the account of Rachel Hurtt, who is now deceased. The other Subject Account is the account of Dr. Luke ST. MARIE, boyfriend and employer of Ms. Hurtt and who is being investigated for violations of the Controlled Substances Act, specifically allowing Ms. Hurtt to fill controlled substance prescriptions in ST. MARIE's name and using his DEA number for controlled substances not issued for a legitimate medical purpose. During conversations Investigators held with Ms. Hurtt's family it was learned that Ms. Hurtt and ST. MARIE communicated via these Google accounts. The content of any such communications between the two could serve to incriminate or exculpate ST. MARIE; could shed light on Ms. Hurtt's or ST. MARIE's state of mind and intent with respect to the prescriptions at issue; and could indicate whether ST. MARIE had a legitimate medical purpose for the prescriptions he wrote

Affidavit of Special Agent Gerald Russell - 2
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

or allowed Ms. Hurtt to write on his behalf. Investigators also learned that ST. MARIE used this Google account as the primary method of contact between himself and certain regulatory agencies, indicating that he also used that account for professional correspondence—which would indicate that the account may contain communications relating to Ms. Hurtt's employment by ST. MARIE or her prescriptions.

6. Accordingly, the search warrant would require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**PROBABLE CAUSE**

7. The DEA Seattle Field Division, Diversion Group has an open investigation into the prescribing practices of Dr. Luke ST. MARIE, a dentist assigned DEA Registration No. FS5420360. ST. MARIE is currently the owner of, and a practicing dentist at, Valley Dental Group, located at 17900 Talbot Rd S., Renton, WA 98055. DEA's investigation alleges that ST. MARIE either wrote controlled substance prescriptions to an individual outside the usual course of professional practice and without a legitimate medical need, or he knowingly allowed this individual to write controlled substance prescriptions to themselves and their family and friends with the full intention of diverting and abusing these controlled substances.

8. In October 2018, the DEA Seattle Field Office Diversion Group received information from Investigator Scott Bramhall with the Washington State Dental Commission ("the Commission") regarding a tip the Commission had received from an area pharmacy. That tip indicated that ST. MARIE was allowing a former employee (Rachel Hurtt) to write controlled substance prescriptions to herself using ST. MARIE's prescription pad. The tip alleged that, in April 2018, the complainant pharmacist contacted ST. MARIE regarding a prescription presented at the pharmacy from ST. MARIE's practice that appeared to have had the name changed from another patient's name to Ms. Hurtt's. ST. MARIE told the

Affidavit of Special Agent Gerald Russell - 3
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

pharmacist he would reissue Ms. Hurtt a new prescription. The pharmacist found the response questionable and conducted additional due diligence. The pharmacist checked surveillance at the pharmacy and saw a male fitting ST. MARIE's description picking up a prescription the day before for Ms. Hurtt. The pharmacist stated that he compared the video to a picture of ST. MARIE on the Valley Dental Group website.

9.  The reporting pharmacist also stated that on July 7, 2018, Ms. Hurtt presented another prescription for Oxycodone with ST. MARIE's DEA number. The Pharmacist spoke with ST. MARIE via phone again at which time ST. MARIE said the prescription was written by him to treat a former employee. However, the Pharmacist stated that ST. MARIE also said that he suspected Ms. Hurtt had gotten ahold of one of his prescription pads and had been writing prescriptions under two other names (Patient B and Patient D). ST. MARIE told the Pharmacist that he would contact DEA and the Washington State Department of Health. DEA has no such record of any calls or conversations with ST. MARIE regarding suspected misuse of his DEA number. The Pharmacist also stated that ST. MARIE told him that the controlled substance prescriptions written to Patient B on July 3, 2018 and June 22, 2018 were written by him, but prescriptions written before June 22, 2018 were not written by him and that none of the prescriptions for Patient D were written by him. During interviews DI Achbach later conducted with Patient B, Patient B stated she never received a controlled substance prescription from ST. MARIE.

10.  In November 2019, the DEA received information from the same Washington State Investigator that Ms. Hurtt had overdosed and passed away at ST. MARIE's residence. Furthermore, the State Investigator conveyed additional details of the state investigation, including that Ms. Hurtt and ST. MARIE were dating and that ST. MARIE had picked up controlled substance prescriptions for Ms. Hurtt that were written under his name and DEA number. Following receipt of the November 2019 tip, the DEA Seattle FDO Diversion Group began an investigation into ST. MARIE's medical practice.

11.  DEA's investigation revealed that on or around August 13, 2017, Ms. Hurtt received her first two prescriptions under ST. MARIE's name and DEA number. The

Affidavit of Special Agent Gerald Russell - 4
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  prescriptions were for Oxycodone/Acetaminophen 5-325mg – 20 count and Hydrocodone-
2  Acetaminophen 5-325mg – 20 count.  Over the course of the next twenty-two months, Ms.
3  Hurtt received another 56 prescriptions filled under ST. MARIE's name and DEA number.
4  DEA's investigation also revealed that in July 2017, Ms. Hurtt began working at ST.
5  MARIE's dental practice. Ms. Hurtt left the dental practice in approximately June 2018.
6  However, according to interviews conducted with former practice employee S.M., Ms. Hurtt
7  started working at the practice again in July 2019.  S.M. stated that before Ms. Hurtt left
8  employment in 2018, there had been only rumors amongst the employees that Ms. Hurtt and
9  ST. MARIE were in a relationship.  By contrast, when Ms. Hurtt resumed working at ST.
10 MARIE's dental practice, it was known to employees that ST. MARIE and Ms. Hurtt were
11 dating; Ms. Hurtt told S.M. that she was dating ST. MARIE and the two were engaged to be
12 married, and showed S.M. an engagement ring. S.M. also stated that it was known to
13 employees that ST. MARIE and Ms. Hurtt were living together at ST. MARIE's house.
14 Family members of Ms. Hurtt confirmed that, in early 2018, Ms. Hurtt moved in with ST.
15 MARIE.

        12.    From approximately August 2017 to May 2019, 56 prescriptions were filled in
Ms. Hurtt's name under the DEA number for ST. MARIE.  These prescriptions were filled at
multiple pharmacies and included a total of 1050 tablets of various narcotic and
benzodiazepine controlled substances, to include:  24 doses of Acetaminophen-Codeine #3,
240 doses of Hydrocodone-Acetaminophen 5-325mg, 16 doses of Hydromorphone 2mg, 136
doses of Lorazepam 1mg, 20 doses of Oxycodone HCL 10mg, 72 doses of Oxycodone HCL
5mg, 440 doses of Oxycodone-Acetaminophen 5/325mg, 90 doses of Tramadol HCL 50mg,
and 12 doses of Triazolam 0.25mg.

        13.    DEA's investigation also revealed that between November 2017 and February
2019, approximately 34 prescriptions for controlled substances were written under ST.
MARIE's name and DEA number to various family and friends of Ms. Hurtt.  A review of
these prescriptions indicated that many were picked up by a person presenting Ms. Hurtt's
Washington State Driver's License.  The prescriptions include approximately 12 controlled

Affidavit of Special Agent Gerald Russell - 5
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

substance prescriptions for Patient B (Ms. Hurtt's sister), 6 for Patient C (Ms. Hurtt's brother), 9 for Patient D (Ms. Hurtt's friend), 3 for Patient E (Ms. Hurtt's sister-in-law), one prescription each for Patient F and Patient G (Ms. Hurtt's friends), and 3 for Patient H (Ms. Hurtt's ex-boyfriend). Additionally, on at least two occasions the filling pharmacy indicates in a note on the prescription that they confirmed the prescriptions with ST. MARIE.  This occurred with a prescription for Patient B and a prescription for Patient H.  In an interview by DEA, Patient B stated they never received a prescription from ST. MARIE.  In information collected by the Commission and provided to DEA, Patient H stated they never received a prescription from ST. MARIE.  In an interview by DEA, Patient E stated they never received a prescription from ST. MARIE.  A letter sent by Valley Dental Group to the Washington State Department of Health in October 2018, and provided to DI Achbach, states that neither Patient B nor Patient D had ever been patients of the practice.  Another letter sent by Valley Dental Group to the Washington State Department of Health in September 2019, and provided to DI Achbach, stated that Patient H had never been a patient of the practice. These 34 prescriptions for various friends and family of Ms. Hurtt came to a total of 680 tablets of various narcotic and benzodiazepine controlled substances, including: 36 doses of Hydrocodone-Acetaminophen 5-325mg, 24 doses of Hydrocodoen-Acetaminophen 7.5/325mg, 108 doses of Lorazepam 1mg, 24 doses of Oxycodone HCL 5mg, 444 doses of Oxycodone-Acetaminophen 5-325mg, 20 doses of Tramadol HCL 50mg, and 24 doses of Vicodin 7.5/300mg.

   14. On November 15, 2019, Ms. Hurtt was found unconscious at ST. MARIE's residence by ST. MARIE.  ST. MARIE initiated CPR while his father called an ambulance. Upon arriving at the residence, Seattle Police noted in their report that drug paraphernalia could be seen in the house.  A drug toxicology test done on Ms. Hurtt at Northwest Hospital revealed that she tested positive for benzodiazepines, cocaine, opiates, and acetaminophen. Additionally, the medical chart for Ms. Hurtt notes that on August 30, 2019 she had also been treated at Northwest Hospital for an unintentional overdose with fentanyl and Xanax. This overdose had also occurred at ST. MARIE's residence.  On November 20, 2019, Ms.

Affidavit of Special Agent Gerald Russell - 6
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Hurtt's family removed her from life support and she passed away. The cause of death stated on Ms. Hurtt's Death Certificate is "probably combined cocaine, opiate (either heroin or pharmaceutical morphine), and unspecified benzodiazepine."

15. During interviews with Ms. Hurtt's family and a former coworker, DI Achbach was told that an employee at Valley Dental had once found a white powdery substance at the practice in a drawer used by ST. MARIE's and that ST. MARIE was told to go to rehab. Additionally, Ms. Hurtt's sibling stated that Ms. Hurtt had previously told her that both she and ST. MARIE were using drugs and that ST. MARIE had at one time had a person living at his house who provided cocaine. The sibling stated Ms. Hurtt told her that ST. MARIE had drugs at his residence, including a medicine cabinet full of drugs. According to Ms. Hurtt, ST. MARIE would write prescriptions to patients without their knowledge, pick up the prescription and take it home. Additionally, documents obtained from the Commission indicate that several former employees of ST. MARIE's practice expressed concerns to the State Investigator that ST. MARIE was writing prescriptions to Ms. Hurtt and that Ms. Hurtt would call the practice to speak to ST. MARIE because pharmacies were calling to verify prescriptions.

16. During the investigation, DEA confirmed that ST. MARIE used google email address **luke.stmarie44@gmail.com** as his contact address for his DEA registration number. During a review of records provided by the Commission, DI Achbach also noted that this same email address was provided as ST. MARIE's email address for his Washington State Dental License. Furthermore, family members of Ms. Hurtt confirmed that the **luke.stmarie44@gmail.com** address is ST. MARIE's email address, and that ST. MARIE would often use this email address to communicate with Ms. Hurtt, especially when she blocked ST. MARIE on social media when they were fighting. Family members stated this was the only email address they knew of for ST. MARIE. From that information, DEA has concluded that ST. MARIE likely uses the **luke.stmarie44@gmail.com** email account for both personal and professional email correspondence, and that that email account likely contains communications with Ms. Hurtt or others regarding either Ms. Hurtt's employment

Affidavit of Special Agent Gerald Russell - 7
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

at Valley Dental or ST. MARIE's relationship with Ms. Hurtt. Given that Ms. Hurtt's relationship with ST. MARIE is relevant to whether he dispensed controlled substances for a legitimate medical purpose, either of those types of communications would be evidence relevant to the crimes being investigated here.

17. Ms. Hurtt's family also stated that Ms. Hurtt had two email addresses she used: **rachelhurtt@icloud.com** and **rachelhurtt8530@gmail.com**. Law enforcement therefore understands that **rachelhurtt8530@gmail.com** was used by Ms. Hurtt to conduct personal communications, including with ST. MARIE. Additionally, while reviewing records provided by the Commission, DI Achbach reviewed Ms. Hurtt's provided employment information from Valley Dental, in which she listed her contact email address of **curve_8530@yahoo.com**.

18. During the investigation DEA confirmed with Ms. Hurtt's family that she had a Facebook Account under the name Rachel Hurtt and that she had been active on the account. During a search for Ms. Hurtt's account, DI Achbach noted an account at **www.facebook.com/rachel.hurtt.1** that had Ms. Hurtt's picture as the profile picture. A review of publicly visible pictures also showed additional images of Ms. Hurtt with known friends and family members liking and commenting on the images. According to Ms. Hurtt's family, ST. MARIE also had a Facebook account and was Facebook "friends" with Ms. Hurtt. A search for a Facebook Account for ST. MARIE produced an account at **www.facebook.com/luke.stluke.5209**. The profile picture on this account has a picture of ST. MARIE and a review of publicly visible pictures on this account revealed that Ms. Hurtt had "liked" ST. MARIE's profile picture.

19. Ms. Hurtt's family also confirmed that she had an Instagram account in her name. Knowing that Facebook and Instagram are linked, DI Achbach searched for any Instagram accounts for Ms. Hurtt or ST. MARIE. An Instagram page of **www.instagram.com/rachel_hurtt/** was located with her picture in the profile thumbnail. Ms. Hurtt's family stated that they knew ST. MARIE had an Instagram account but they thought he might have closed it and were not sure of the user name. Ms. Hurtt's sister stated

Affidavit of Special Agent Gerald Russell - 8
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

it was Luke ST. MARIE or Luke St. "something." DI Achbach searched available information for Instagram using the both "luke ST. MARIE" and the "luke st luke" used on the facebook account and located an Instagram account **www.instagram.com/dr.luke.stluke/** with ST. MARIE's picture as the profile picture.

20. Ms. Hurtt's family stated that ST. MARIE and Ms. Hurtt would communicate through their social media platforms. Ms. Hurtt's sister stated she knew this because, when Ms. Hurtt and ST. MARIE were fighting, Ms. Hurtt would often block him on social media if she did not want to talk to him. Additionally, DI Achbach knows that friends and couples routinely communicate directly with each other through chat features in social media platforms such as Facebook and Instagram.

21. Washington State Department of Health Investigator Scott Bramhall also stated that during an earlier review of Ms. Hurtt's Facebook page, he noted several images of Ms. Hurtt and ST. MARIE kissing. In one image they appear to be in a restaurant and in another image they are in a kitchen later identified by ST. MARIE's ex-wife as the kitchen of ST. MARIE's residence.

22. During a review of subpoenaed phone records for Ms. Hurtt (**425-780-1416**) and ST. MARIE (**425-931-9955**), DI Achbach noted regular text and call communication between the two numbers. Additionally, DI Achbach noted that that on December 6, 2019, Ms. Hurtt's cell phone received a text from #32665 registered to "Facebook Short Code." An online query of common Facebook questions determined that text messages from Facebook are often sent to the phone number a Facebook account has on file when someone is attempting to access an account and is attempting a password reset. It is noted that at the time this text was received on Ms. Hurtt's phone number, Ms. Hurtt had been deceased over two weeks. During a conversation with Ms. Hurtt's family, DI Achbach learned that the family had been unable to access any of Ms. Hurtt's social media or email accounts. Family members also stated that ST. MARIE is in possession of Ms. Hurtt's cell phone and computer.

Affidavit of Special Agent Gerald Russell - 9
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## BACKGROUND REGARDING GOOGLE'S SERVICES

23. In my training and experience, I have learned that Google provides a variety of online services, including electronic mail ("email") access, to the general public. Google allows subscribers to obtain email accounts at the domain name "Gmail.com", like the email account listed in Attachment A.

24. Subscribers obtain an account by registering with Google. When doing so, email providers like Google ask the subscriber to provide certain personal identifying information. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users, and to help establish who has dominion and control over the account.

25. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help identify which computers or other devices were used to access the e-mail account.

26. In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google's servers

Affidavit of Special Agent Gerald Russell - 10
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

indefinitely.  Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

27.     When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google often maintains a copy of the email sent.  Unless the sender of the email specifically deletes the email from Google's server, the email can remain on the system indefinitely. Even if the sender deletes the email, it may continue to be available on Google's servers for a certain period of time.

28.     A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email.  If an email user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

29.     As explained herein, information stored in connection with an e-mail account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, this enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an e-mail account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contact lists, images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the e-mail provider can show how and when the account was accessed or used. For example, as described above, e-mail providers typically log the Internet Protocol (IP) addresses from which users access the e-mail account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the e-mail account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account

Affidavit of Special Agent Gerald Russell - 11
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

owner. Additionally, information stored at the user's account may further indicated the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via e-mail). Last, stored electronic data may provide relevant insight into the e-mail account owner's state of mind as it relates to the offense under investigation. For example, information in the e-mail account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement), and the knowing involvement of other participants in the scheme.

30. In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

31. Additionally, subscribers to Google Gmail might not store on their home or business computers copies of the e-mails stored in their Google account. This is particularly true when they access their Google account through the web, or if they do not wish to maintain particular e-mails or files in their residence or at their business.

32. Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Google, and its agents and employees, to assist agents in the execution of this warrant. Once issued, the search warrant will be presented to Google with direction that it identify the Google account described in Attachment A to this affidavit, as well as other subscriber and log records associated with the accounts, as set forth in Section I of Attachment B to this affidavit.

33. The search warrant will direct Google to create an exact copy of the specified account and records.

Affidavit of Special Agent Gerald Russell - 12
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

34. I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

35. Analyzing the data contained in the forensic image may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally may need to be modified based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common email, database and spreadsheet applications do not store data as searchable text. The data may be saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well. Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

36. Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of email communications, chat logs and documents, that identify any users of the subject account and emails sent or received in temporal proximity to incriminating emails that provide context to the incriminating communications.

//
//
//

Affidavit of Special Agent Gerald Russell - 13
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

37. Based on the foregoing, I request that the Court issue the proposed search warrant.

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Accordingly, by this Affidavit and Warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment.

Gerald Russell, Affiant
Special Agent
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 26th of June 2020.

HONORABLE MICHELLE L. PETERSON
United States Magistrate Judge

Affidavit of Special Agent Gerald Russell - 14
USAO# 2020R00359

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A

## Account to be Searched

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with the following Google ID and/or Google or Gmail e-mail account:

**luke.stmarie44@gmail.com**

**rachelhurtt8530@gmail.com**

(the "SUBJECT ACCOUNTS"), as well as all other subscriber and log records associated with the account, which are located at premises owned, maintained, controlled or operated by Google LLC, an email provider that accepts service of legal process at the following address:

Google LLC

C/O Custodian of Records

1600 Amphitheatre Parkway

Mountain View, CA 94043

# ATTACHMENT B

**I. Information to be disclosed by Google LLC ("Google"), for search:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose the following information to the government for each account or identifier listed in Attachment A:

1. The contents of all emails associated with the account between July 2017 and the present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;
2. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);
3. The types of service utilized;
4. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;
5. All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within **14 days** of service of this warrant.

**II. Information to be seized by the government:**

Information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. § 841(a)(1) and 842(a)(1) (prescribing controlled substances without a legitimate medical purpose), those violations occurring between July 1, 2017 and the present, including, for each account or identifier listed on Attachment A, information pertaining to the following:

    a.    Any communication or document regarding the prescription, dispensing, transfer, or sale of controlled substances;

    b.    Any communication or document regarding efforts to conceal or disguise the purpose of a controlled substance prescription;

    c.    Any communication or document wherein medical advice, including with respect to controlled substances, is provided or sought;

    d.    Any communication or document involving a relationship (sexual or personal) between Luke St. Marie and Rachel Hurtt, or the exchange of controlled substances in furtherance of a relationship;

    e.    Any communication or document regarding efforts to conceal or disguise the nature of such a relationship;

    f.    Evidence indicating Luke St. Marie's or Rachel Hurtt's state of mind as it relates to the crime under investigation;

    g.    Evidence indicating how and when the email account was accessed or used, to determine the context of account access, use, and events relating to the crime under investigation and to the email account owner;

    h.    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

    i.    The identity of any persons who communicated with **luke.stmarie44@gmail.com** or **rachelhurtt8530@gmail.com** about the matters described in subsections (a) through (f), above;

1          j.     Any address lists or buddy/contact lists associated with the specified
2  account;
3          k.     All subscriber records associated with the specified account, including
4  name, address, local and long distance telephone connection records, or records of session
5  times and durations, length of service (including start date) and types of service utilized,
6  telephone or instrument number or other subscriber number or identity, including any
7  temporarily assigned network address, and means and source of payment for such service)
8  including any credit card or bank account number; and
9          l.     Other log records, including IP address captures, but not including
10 location history, associated with the specified account.